# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM F. BROBST, JR., et al, | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | NO. 16-4051 |
| DAVID W. CROSSETT, ESQ., et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

STENGEL, J.                                                                                               May 31, 2017

This case involves a father's efforts to evict his son from land the father owns, but on which the son maintains a mobile home. The father and several attorneys involved in this unhappy saga filed motions to dismiss. For the following reasons, the motions to dismiss are granted in part and denied in part.

## I.      FACTUAL BACKGROUND[1]

The plaintiffs[2] filed the amended complaint raising various federal and state law claims in connection with a property located at 118 N Kemp Road in Kutztown, Pennsylvania. (Compl. Ex. A.) The plaintiffs had been living at the property for some period of time, including while they cared for Brobst, Jr.'s disabled brother.[3] (Am. Compl. ¶¶ 32–34.) The plaintiff's brother

---

[1] This Memorandum is written primarily for the parties, and therefore much of the lengthy factual history set forth in the amended complaint has been omitted.

[2] Plaintiff William F. Brobst, Jr., is the son of defendant William F. Brobst, Sr.; Roxanne Brobst is William F. Brobst, Jr.'s wife and Keshia Brobst is their daughter.

[3] The amended complaint also references a property located at 122 N Kemp Road. It is not entirely clear from the amended complaint when, or in what combination, William F. Brobst,

had been granted a life estate in the property by their mother. (Id. at ¶¶ 28–32.) Four days after the brother's death, Brobst, Sr. sent the plaintiffs an eviction notice, prepared by his attorneys. (Id. at ¶¶ 33, 39.) Thereafter, Brobst, Sr. filed a Complaint in Ejectment in the Court of Common Pleas of Berks County, Pennsylvania. (Id. at ¶ 40.) The parties litigated the matter over the course of the next year, and ultimately the court granted Brobst, Sr.'s motion for summary judgment as to legal title of the premises. (Id. at ¶¶ 40–48.)

The defendants subsequently paid for a certified copy of the Berks County court's order, without notice or copy to the plaintiffs. (Id. at ¶ 49.) On July 11, 2016, the defendants filed for an ex-parte Writ of Possession and for the Berk's County Sheriff's Department to forcibly evict the plaintiffs from the property, bar them from entering their mobile homes, or retrieving their personal property. (Id. at ¶ 50.) On July 19, 2016, a Sheriff's Deputy arrived and informed Keshia that he had a Writ of Possession and that she had to leave without taking anything.[4] (Id. at ¶ 51.) Defendants Crossett and Brobst, Sr. were present during the eviction. (Id. at ¶ 55.)

After being contacted by the plaintiffs' counsel, the Berks County Court of Common Pleas issued an order striking the ex-parte writ. (Id. at ¶ 59.) That same evening, the Berks County Sheriff's Department served the order striking the ex-parte writ. (Id. at ¶ 60.)

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide

---

Jr.'s mother, his brother, or Brobst, Jr. and his family, were living at which property at what time.

[4] The amended complaint contains a description of the events and alleged abuses that the defendants committed as the eviction process was unfolding. (See Am. Compl. ¶¶ 51–58.)

2

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a

3

short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

The Smith defendants[5] and Brobst, Sr. each move to dismiss the plaintiffs' amended complaint in its entirety for failure to state a claim under Rule 12(b)(6) and for lack of subject matter jurisdiction under Rule 12(b)(1), and argue that I should not exercise supplemental jurisdiction over the plaintiffs' state law claims. The defendants also argue that the plaintiffs' claims are barred by the Rooker-Feldman doctrine. Having considered the amended complaint and the parties' briefs, I find that the Rooker-Feldman doctrine does not apply to the plaintiffs' claims. I also find that they have sufficiently stated claims pursuant to § 1983, and I will therefore exercise supplemental jurisdiction over those state law claims which have been sufficiently pled as outlined below. I also find, however, that the FDCPA, FCEUA, UTPCPL, Landlord Tenant Act, civil conspiracy, wrongful use of civil proceedings, and Dragonetti Act claims fail as a matter of law. I will therefore grant the defendants' motions to dismiss with respect to counts four, five, six, seven, eight, ten, and twelve.

### A. **The Federal Law Claims**

In counts one, two, and three of the amended complaint, the plaintiffs set forth claims pursuant to 42 U.S.C. § 1983 for violations of their Fourteenth Amendment due process rights

---

[5] The "Smith defendants" are defendants David W. Crossett, Esquire, James M. Smith, Esquire, and Smith Law Group, LLC.

and their Fourth Amendment rights against search and seizure, as well as a related claim for attorneys' fees pursuant to 42 U.S.C. § 1988. (See Am. Compl. ¶¶ 79–110.) In count four, the plaintiffs allege that the defendants violated the Fair Debt Collection and Practices Act, 15 U.S.C. § 1692 ("FDCPA"). (Id. ¶¶ 111–17.)

1. **Grounds for Dismissal Pursuant to Rule 12(b)(6)**

   a. **Claims Pursuant to § 1983 and § 1988**

The plaintiffs allege that, by obtaining the writ in the eviction proceeding without following the Pennsylvania rules for providing notice, the defendants caused the sheriff to conduct an unlawful eviction that violated their Fourteenth Amendment due process rights as well as their Fourth Amendment rights. (See Am. Compl. ¶¶ 81–89, 93–106.)

While conceding that a private individual may be found to have acted under color of state law for purposes of a § 1983 claim, the defendants argue that they cannot be liable for Fourteenth Amendment violations in connection with the eviction proceedings because the plaintiffs have not shown that the defendants had a subjective appreciation that the Pennsylvania ejectment statute was unconstitutional, or that they acted with malice. (See Smith Defs.' Mem. Supp. Mot. Dismiss 7.) This argument misses the mark for two reasons. First, the plaintiffs do not yet have a burden to "show" that the defendants had a particular state of mind—at the motion to dismiss phase, the plaintiffs need only set forth plausible allegations. Second, the defendants ignore the fact that the plaintiffs' claims are based on the defendants' alleged failure to comply with all the necessary Pennsylvania rules relating to notice in eviction proceedings, and not the ejectment statute or the state court ejectment proceedings.

As to the Fourth Amendment claim, the defendants focus on the fact that the plaintiffs had notice of the ejectment proceedings, and that they had no possessory interest in the property

as a result of the state court's entry of a judgment of possession for Brobst, Sr. (Smith Defs.' Mem. Supp. Mot. Dismiss 8–9.) As the plaintiffs point out, however, they are asserting Fourth Amendment claims for an unlawful seizure of their personal property and the mobile homes, in which they allege that they do have a possessory interest. (Am. Compl. ¶¶ 99–100.) And, as stated above, the plaintiffs base their claims on the lack of notice as to the "forcible, double secret eviction," not the ejectment action. (Am. Compl. ¶ 87.)

Based on the above, the defendants' motions to dismiss the § 1983 claims and the § 1988 attorneys fee claim in counts one, two, and three are denied.

### b. FDCPA Claim

The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer *to pay money arising out of a transaction* in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added). In the amended complaint, the plaintiffs allege that the defendants were trying to obtain possession of real property that they could not obtain under the law, and attempting to collect money not expressly authorized or permitted by law. (Am. Compl. ¶¶ 112, 114.) They argue that the defendants' actions "revolve around the collection of monies Sr. feels he is due" and that "[p]ursuant to the contingency agreement by and between he and Smith, they seek to liquidate the property and share the spoils." (Pls.' Resp. Opp'n to Smith Defs.' Mot. Dismiss 19.) The plaintiffs argue that the defendants made a specific demand for money that the plaintiffs do not owe, citing an email from defendant Crossett to their attorney in which Crossett states that he will recommend a certain dollar amount to his client as the amount of security that the plaintiffs should file in connection with their appeal of the state court's decision in the

ejectment proceeding. (Id. and Ex. A.) Even if the plaintiffs are correct that they need not post security in connection with their appeal, (id. at 19 n.14), the contents of that email do not amount to an attempt to collect a "debt" as defined by the FDCPA. Accordingly, the FDCPA claim in count four is dismissed.[6]

### 2. **Grounds for Dismissal Pursuant to Rule 12(b)(1)**

The defendants argue that the amended complaint must be dismissed for lack of subject matter jurisdiction because of the Rooker-Feldman doctrine. (See Smith Defs.' Mem. Supp. Mot. Dismiss 22–24; Brobst, Sr. Mem. Supp. Mot. Dismiss 19–22.) The Rooker-Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). The Supreme Court has also "explained that Rooker–Feldman is not implicated 'simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (quoting Exxon Mobile, 544 U.S. at 293). The Third Circuit has stated that "there are four requirements that must be met for the Rooker–Feldman doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Great W. Mining & Mineral Co., 615 F.3d at 166 (quoting Exxon Mobile, 544 U.S. at 284).

Here, the plaintiffs' claims do not invite a review and rejection of the state court judgment in the ejectment action. The plaintiffs' claims are premised on the way in which the

---

[6] The plaintiffs withdrew their FDCPA claim against Brobst, Sr., but that claim would otherwise be dismissed for the reasons discussed above. (See Pls.' Resp. Opp'n to Brobst, Sr. Mot. Dismiss 1 n.1.)

7

defendants obtained a writ that started the eviction proceeding, not whether they were permitted to begin proceedings to evict the plaintiffs based on the judgment in state court or whether the state court decision was correct. Accordingly, the Rooker-Feldman doctrine does not apply to bar the plaintiffs' claims from consideration, and the defendants' motions to dismiss the amended complaint for lack of subject matter jurisdiction are denied.

### B. The State Law Claims

The plaintiffs also assert numerous state law claims, each of which are discussed below.

#### 1. The Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")

The plaintiffs allege that, pursuant to the terms of the FCEUA, a violation of the FDCPA is a *per se* violation of the FCEUA and the UTPCPL. (Am. Compl. ¶¶ 199–200.) As discussed above, the plaintiffs have failed to state an FDCPA claim, and therefore cannot state FCEUA and UTPCPL claims on that basis. They further alleged that the "Defendants' conduct as alleged above also constitutes separate and independent substantive violations of the FCEUA" and that "Defendants' acts, as described herein, violated the FCEUA." (Am. Compl. ¶¶ 121, 123.) These conclusory allegations are simply insufficient to state a claim. For both these reasons, therefore, the FCEUA claim in count five is dismissed.

The UTPCPL claim must also be dismissed. As to the Smith defendants, the parties dispute whether the UTPCPL may be applied to attorneys at all, or whether, as the plaintiffs assert, that it may apply to attorneys engaged in collection actions. (See Pls.' Resp. Opp'n to Smith Defs.' Mot. Dismiss 19 (citing Pls.' Ex. A).) As discussed above, Crossett's email regarding a proposed amount of security to be posted in connection with an appeal is not an attempt to collect a debt. As to Brobst, Sr., the allegations are plainly insufficient. The plaintiffs

8

do not indicate how Brobst, Sr. violated the UTPCPL, other than by making vague references to the underlying dispute in the state court proceedings and the parties' differing viewpoints as to who has what rights in the property. Accordingly, count six is dismissed.

### 2. The Landlord Tenant Act

The plaintiffs have not alleged facts in support of their allegations that the defendants violated the Landlord Tenant Act, other than by stating that the defendants "intentionally avoided all" of Pennsylvania's notice and practice requirements in eviction proceedings. (Am. Compl. ¶ 134.) The plaintiffs also failed to make any argument in response to the defendants' assertions regarding the state court's findings that there was no landlord tenant relationship between Brobst, Sr. and the plaintiffs, and that the plaintiffs were not tenants because they did not pay rent. (See Smith Defs.' Mem. Supp. Mot. Dismiss 15.) Count seven is therefore dismissed.

### 3. Civil Conspiracy

In order to establish liability for civil conspiracy under Pennsylvania law, a plaintiff must show that: (1) two or more defendants conspired with a common purpose to do (a) an unlawful act, or (b) a lawful act by unlawful means or for an unlawful purpose; (2) the defendants committed an overt act in furtherance of the conspiracy; and (3) the plaintiff suffered legal damages. Weaver v. Franklin County, 918 A.2d 194, 202 (Pa. Commw. Ct. 2007).

Here, the plaintiffs allege that the Smith defendants, who are attorneys and a law firm, engaged in a civil conspiracy with their client, Brobst, Sr. "Under Pennsylvania law, the intracorporate conspiracy doctrine holds that, '[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves.'" Jarzyna v. Home Properties, L.P., 114 F. Supp. 3d 243, 279 n.44 (E.D. Pa. July 17, 2015) (quoting Rutherfoord v. Presbyterian–Univ. Hosp., 417 Pa. Super. 316, 612 A.2d 500, 508 (1992)). The doctrine also

9

applies in the attorney-client context, such that defendants acting within the scope of an attorney-client relationship cannot be considered conspirators. See Heffernan v. Hunter, 189 F.3d 405, 407, 412–13 (3d Cir. 1999) (addressing an allegation of civil conspiracy under 42 U.S.C. § 1985); General Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313–14 (3d Cir. 2003) (applying Pennsylvania law). Because the Smith defendants cannot be considered conspirators for acting on behalf of their client, and because Brobst, Sr. cannot have conspired with himself, count eight must be dismissed.

### 4. Intentional Infliction of Emotional Distress

While the defendants correctly point out in their briefs that the degree of extreme behavior required to support a claim for intentional infliction of emotional distress is difficult to establish, I will allow this claim to proceed past the motion to dismiss phase. The motions to dismiss count nine are therefore denied.

### 5. Wrongful Use of Civil Proceedings/The Dragonetti Act

The plaintiffs allege that the defendants' conduct—which they describe as a "self-serving bastardization of legal process" that was "intended to thwart [the p]laintiffs' appeal rights, possessory interests, and to pressure and humiliate Bill, Roxanne, and Keshia"—constitutes the tort of wrongful use of civil proceedings. (Am. Compl. ¶¶ 149–50.) They also vaguely plead some of the elements of a Dragonetti Act claim. (Am. Compl. ¶¶ 123–28.)

"Via the Dragonetti Act, 42 Pa. C.S. § 8351, 'Pennsylvania has codified the common-law cause of action for wrongful use of civil proceedings. The tort is interpreted and applied broadly against those who use legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process.'" Di Loreto v. Costigan, 600 F. Supp. 2d 671, 686–87 (E.D. Pa. 2009) (quoting Schmidt v. Currie, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2005)) (additional

10

citations and internal quotation marks omitted). "The Dragonetti Act provides that a person who takes part 'in the procurement, initiation or continuation of civil proceedings against another' may be liable for wrongful use of civil proceedings if, '(1) [h]e acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and (2) [t]he proceedings have terminated in favor of the person against whom they are brought.'" Id. at 687 (quoting 42 Pa. Cons. Stat. § 8351).

The plaintiffs' Dragonetti Act claim fails as a matter of law because they cannot satisfy the first element. The defendants, in instituting the eviction proceedings, acted with a purpose of adjudicating the claims that were the subject of the state court ejectment proceedings. Even if, as the plaintiffs allege, they did so without complying with the necessary rules, it is still the case that their primary purpose was to evict the plaintiffs from the property to which Brobst, Sr. was entitled to possession based on the outcome of the underlying state court action. Because the plaintiffs cannot bring the common law version of Dragonetti Act claim,[7] and because they cannot satisfactorily plead the first element of a Dragonetti Act claim, counts ten and twelve are dismissed.

### 6. Abuse of Process

The plaintiffs next allege that the defendants intentionally used the Pennsylvania Rules of Civil Procedure "to circumvent Plaintiffs['] procedural due process rights so as to displace them of their possessory interest in the premises before they could timely and properly assert

---

[7] In discussing the advent of the Dragonetti Act, courts have noted that "[i]t is apparent that the legislature's purpose was to replace the common law cause of action with a new and broader cause of action, not to create an alternative to the common law cause of action." Nw. Nat. Cas. Co. v. Century III Chevrolet, Inc., 863 F. Supp. 247, 250 (W.D. Pa. 1994).

11

such as proscribed under [the law,]" and that such conduct constitutes abuse of process. (Am. Compl. ¶¶ 121–22.)

Despite Brobst, Sr.'s argument to the contrary, Pennsylvania courts still recognize the tort of abuse of process,[8] as described below.

> Pennsylvania common law defines a cause of action for abuse of process as follows: The tort of "abuse of process" is defined as the use of legal process against another primarily to accomplish a purpose for which it is not designed. To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.

Lerner v. Lerner, 954 A.2d 1229, 1238 (Pa. Super. 2008) (internal citation omitted). "The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure." Id. To support an abuse of process claim, "the [plaintiff] must show some definite act or threat not authorized by

---

[8] Brobst, Sr. cites Stone Crushed Partnership v. Jackson, 908 A.2d 875, 887 n.1 for the proposition that the abuse of process tort was subsumed by the passage of the Dragonetti Act. (Def. Brobst, Sr. Mem. Supp. Mot. Dismiss 16.) Subsequent decisions, however, make clear that the abuse of process tort is still recognized by the Pennsylvania courts. Although the Pennsylvania "Supreme Court has stated, in dicta, that the Dragonetti Act 'subsumes both the torts of malicious use of process and abuse of process,' . . . since Stone Crushed Partnership, this Court has continued to recognize common law abuse of process claims." Freundlich & Littman, LLC v. Feierstein, No. 3381 EDA 2015, 2017 WL 712911, at *4 (Feb. 23, 2017), reargument denied (May 2, 2017); see also Langman v. Keystone Nazareth Bank & Trust Co., 502 F. App'x 220, 224 (3d Cir. 2012) (noting that "the Pennsylvania Supreme Court's statement in Stone Crushed regarding subsumption within § 8351 was obiter dicta" and that Pennsylvania "courts have consistently treated common law abuse of process claims as separate from Dragonetti § 8351 wrongful use of civil proceedings claims, notwithstanding the Stone Crushed dicta.") (citation omitted).

Brobst, Sr. also incorrectly argues that an abuse of process claim requires a termination favorable to the plaintiff. (Def. Brobst, Sr. Mem. Supp. Mot. Dismiss 17.) In fact, there is "a judicial chorus of support demonstrat[ing] that a plaintiff need not show favorable termination of judicial proceedings as part of an abuse of process claim." Langman, 502 F. App'x at 225 (internal citation and quotation marks omitted).

12

the process, or aimed at an objective not legitimate in the use of the process." Id. But, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Id. As the plaintiffs have alleged that the defendants both purposely failed to provide notice in connection with the eviction proceedings and did so with bad intentions, I must decline to dismiss the abuse of process claim in count eleven at this stage of proceedings.

### 7. Trespass/Assumpsit

The plaintiffs also bring a claim for trespass, based on the defendants' actions which they allege unlawfully evicted them and displaced them from their mobile homes, outbuilding, and their personal items. (Am. Compl. ¶¶ 131–33.) The defendants argue that they cannot have committed trespass because Brobst, Sr. was awarded possession of the property in the state court proceedings. These arguments ignore the distinction between the state court ejectment proceedings and the entry and striking of the writ in the eviction proceedings, as well as the entrance on the property as opposed to entry into the plaintiffs' mobile homes that were located on the property. Whether the plaintiffs can ultimately prevail on a trespass claim remains to be seen.[9] It is for now sufficient that the plaintiffs have alleged that the defendants entered their property, as opposed to "the property," during an unlawful eviction proceeding undertaken without the required notice. The motions to dismiss count thirteen are, therefore, denied.

### 8. Conversion

The plaintiffs' last substantive claim alleges that the defendants deprived them of the use of their mobile homes, outbuilding, and the personal items within those structures as a result of

---

[9] The parties rely on case law pertaining to a landlord's trespass in claims brought by tenants. As discussed above, the state court found that there was no landlord tenant relationship between Brobst, Sr. and the plaintiffs. Going forward, therefore, the plaintiffs will have to establish that a trespass occurred without reference to tenants' rights.

13

the eviction proceedings. (Am. Compl. ¶¶ 135–36.) They argue that, because the eviction was prompted by "an illegal Writ," and because it denied them access to their property, the defendants are liable for conversion. (Pls.' Resp. Opp'n to Smith Defs.' Mot. Dismiss 22.) The Smith defendants argue that the eviction was lawful because it was set in motion by a judgment of possession, but they do not address the plaintiffs' contention that the nature of the writ, which was obtained and executed without notice, renders the eviction unlawful. (See Smith Defs.' Mem. Supp. Mot. Dismiss 21.) Their argument, therefore, does not require dismissal of this claim.

Brobst, Sr. argues that the conversion claim fails because real property cannot be the subject of an action for conversion. (Brobst, Sr. Mem. Supp. Mot. Dismiss 18–19 (citing Sterling v. Redevelopment Authority of City of Philadelphia, 836 F. Supp. 2d 251, 270 (E.D. Pa. 2011)).) It is not clear from the amended complaint whether the plaintiffs' trailers are permanently affixed to the land such that they are realty, or whether they are still movable and therefore considered personalty.[10] Thus, I cannot determine whether the mobile homes, or only their contents, are chattels which can be the subject of a conversion claim.

---

[10] As Pennsylvania courts have stated,
> "[t]he test to determine whether a chattel becomes part of the realty [is] as follows:
> A fixture is an article in the nature of personal property which has been so annexed to the realty that it is regarded as part and parcel of the land. Black's Law Dictionary 575 (5th ed. 1979). The considerations to be made in determining whether or not a chattel becomes a fixture include (1) the manner in which it is physically attached or installed, (2) the extent to which it is essential to the permanent use of the building or other improvement, and (3) the intention of the parties who attached or installed it.

Custer v. Bedford Cnty. Bd. of Assessment & Revision of Taxes, 910 A.2d 113, 116–17 (Pa. Commw. Ct. 2006) (quoting In re Sheetz, Inc., 657 A.2d 1011, 1013 (Pa. Commw. Ct. 1995)) (additional citation omitted).

For these reasons, the defendants' motions to dismiss count fourteen are denied.

### 9. Declaratory Relief and Jury Demand

Finally, the motions to dismiss counts fifteen and sixteen are denied, as those counts simply set forth forms of requested relief in connection with the plaintiffs' § 1983 claims, as well as their state law claims.

## IV. CONCLUSION

In light of the foregoing, the defendants' motions to dismiss are granted in part and denied in part. For the reasons discussed above, counts four, five, six, seven, eight, ten, and twelve are dismissed without prejudice.

An appropriate Order follows.