# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM F. BROBST, JR., ROXANNE BROBST, h/w, and KESHIA BROBST, | : : : : | CIVIL ACTION NO. 16-4051 |
| Plaintiffs, | : : | |
| vs. | : : | |
| WILLIAM F. BROBST, SR., DAVID W. CROSSETT, ESQUIRE, SMITH LAW GROUP, LLC, and JAMES M. SMITH, ESQUIRE, | : : : : : | |
| Defendants. | : : | |

Henry S. Perkin, M.J.                                                                                         June 19, 2018

## **MEMORANDUM**

Presently before the Court are multiple pending dispositive motions filed by all of the parties. After review of these motions, the Court is prepared to issue the following decision.

## I. **JURISDICTION.**

The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## II. **FACTS.**

Brobst Sr., by and through his attorney David W. Crossett, Esquire ("Attorney Crossett") filed a complaint in ejectment in the Berks County Court of Common Pleas in June of 2015, seeking to eject his son, William F. Brobst, Jr. ("Brobst Jr."), his daughter-in-law, Roxanne Brobst and his granddaughter, Keshia Brobst (collectively "Plaintiffs") from a parcel of

property Brobst Sr. owns on Kemp Road in Kutztown, Pennsylvania ("the Real Property").[1]
Plaintiffs resided in a trailer that had been placed on the Real Property. Brobst Sr. also sought a right of possession as surviving tenant by the entireties. The Plaintiffs, who were the defendants in the Berks County action, sought reformation of the 1971 deed of The Real Property or, in the alternative, the grant of a constructive trust in the property for an undetermined amount of money and services. The Honorable James M. Lillis of that court granted summary judgment to Brobst Sr. and a judgment for possession which granted him sole ownership and the sole right to possession of the Real Property by Order signed on June 22, 2016. The Order was filed in the Prothonotary's Office of Berks County on June 23, 2016. On July 11, 2016, Brobst Sr., represented by Attorney Crossett, filed a Writ of Possession with the Berks County Prothonotary pursuant to Pa. R.C.P. 3160, *et seq*. On July 12, 2016, the Prothonotary issued a Writ of

---

[1] Brobst Sr. and his wife Ruth purchased the Real Property and recorded the transaction by a deed dated October 19, 1971. They held the property as tenants by the entireties with a right of survivorship. Ruth had a son from a previous marriage, Neil, a severely disabled child with cerebral palsy. Ruth and Brobst Sr. had one son, Brobst Jr. In 1984, Brobst Sr. left Ruth to live with his girlfriend and vacated the marital residence, thereafter allowing Ruth full use of the Real Property until her death. Brobst Sr. returned to the Real Property for occasional visits but never again lived on the Real Property.

Sometime between 1985 and 1986, Brobst Jr. and his wife Roxanne sought the permission of Brobst Sr. to purchase a trailer and live on the Real Property with Ruth and Neil. Brobst Sr. granted them permission, and since that time, the Plaintiffs have occupied the Real Property. The trailer home was given a separate mailing address and separately assessed for real estate tax purposes. Plaintiffs maintain that they paid all taxes for their address and 1/3 of the taxes for the Real Property at the request of Brobst Sr. Plaintiffs never paid Brobst Sr. any rent and claimed that Brobst Sr. told them they could remain for life and take ownership of the land if they cared for the land, Ruth and Neil.

Ruth died on December 21, 2011, survived by Brobst Sr., Neil and Brobst Jr. In her Will, Ruth purportedly devised the land to Plaintiffs subject to a life estate to Neil. Brobst Sr. allowed Neil to remain on the Real Property until his death in February 2015. Brobst Sr. served a Notice to Vacate on Plaintiffs on February 18, 2015 and a second Notice to Vacate on April 1, 2015. When Plaintiffs refused to vacate the Real Property, Brobst Sr. filed a Complaint in Ejectment against them in the Berks County Court of Common Pleas on June 1, 2015.

Possession to the Berks County Sheriff's Department.[2]

On July 19, 2016, at approximately 1:30 p.m., the Sheriff's Department executed at the Real Property on the Writ of Possession. Brobst Jr. emerged from his trailer home onto the porch and was yelled at by one of the Sheriff's deputies that he had fifteen minutes to vacate the Real Property, and the deputy came up to the door. Two sheriffs followed Brobst Jr. into the house and one followed him to the bathroom. Brobst Jr. knocked on the door and then opened the door to tell Keshia, who is approximately twenty-five years old, that they had to go. The Sheriff with Brobst Jr. pushed open the bathroom door revealing a naked Keshia Brobst getting out of the shower. Another Sheriff asked for and was given the keys to the trailer where Ruth and Neil had lived, which Brobst Jr. told him was used for storage. Brobst Jr. called his wife, Roxanne Brobst, at work and she drove home. Brobst Jr. moved some of the family's vehicles onto the neighbor's land and the Plaintiffs were permitted to gather any personal property needed

---

[2] Plaintiffs contend that the parties received the June 22, 2016 Order on or about June 28 or 29, 2016 and unbeknownst to Plaintiffs, Attorney Crossett or someone acting on his behalf sought a Final Judgment on June 28, 2016. Plaintiffs also contend that Attorney Crossett moved to obtain a Writ of Possession on June 29, 2016 without notice to Plaintiffs. According to Plaintiffs, "someone" filed a Praecipe for final judgment and, paying the associated fees including the e-filing fee, obtained a Judgment by Order on July 5, 2016, which was the first day such an order could be obtained. On July 11, 2016, Plaintiffs contend that Attorney Crossett or someone on his behalf filed another Praecipe for Writ of Possession, the result of which was the subject Writ issued to the Sheriff. The Sheriff accepted the Writ and a check dated June 29, 2016 from the Smith Law Group and served the Writ on Plaintiffs on July 19, 2016.

Plaintiffs contend that Attorney Crossett moved to "evict" Plaintiffs from the property before they could exercise any pre-deprivation rights such as bond, reconsideration, or modification. According to Plaintiffs, Attorney Crossett knew that he needed to dispossess Plaintiffs from the Real Property so that they could not press their affirmative defenses to ejectment which were unresolved by the Court of Common Pleas of Berks County at that time, including license and payment and which could have afforded Plaintiffs additional time on the Real Property. Thus, Plaintiffs contend that the Smith Defendants did not follow the Pennsylvania Rules of Civil Procedure.

The Smith Defendants respond that they provided Plaintiffs with all notice and/or post-deprivation process to which they were entitled under the law. They further contend that Plaintiffs did not have a statutory right to notice under the Pennsylvania Rules of Civil Procedure because the underlying matter was an ejectment action and the Praecipe for Writ of Possession was entered according to enforcement procedures regarding a judgment for possession entered in ejectment proceedings.

such as clothing, medications, guns and their seven cats and left the Real Property at approximately 2:15-2:30p.m. on that date. The Sheriffs did not change the locks on the trailer.

That same day, July 19, 2016, counsel for the Plaintiffs filed an Emergency Petition to Strike the Writ of Possession and Judge Lillis entered an order striking the Writ of Possession. Plaintiffs returned to the Real Property that day at approximately 6:30 p.m., finding nothing damaged or destroyed in their absence. On July 20, 2016, Plaintiffs appealed the June 22, 2016 judgment for possession which granted Brobst Sr. sole ownership and the sole right to possession of the Real Property. Plaintiffs continued to reside on the Real Property until January, 2017, and they removed their trailer from the Real Property in February, 2017. On February 21, 2017, the Pennsylvania Superior Court affirmed Judge Lillis' grant of possession of the Real Property to Brobst Sr.

### III.   PROCEDURAL HISTORY.

On July 27, 2016, Plaintiffs filed the instant matter against Brobst Sr., Attorney Crossett, The Smith Law Group, LLC (Attorney Crossett's law firm), and James M. Smith, Esquire (collectively "The Smith Defendants"), while the state court appeal was ongoing. Following motions to dismiss filed by Brosbst Sr. and the Smith Defendants, Plaintiffs filed the Amended Complaint on September 19, 2016. The Amended Complaint contained sixteen counts, including claims alleging violations of Plaintiffs' Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. section 1983 and a claim for attorney fees pursuant to 42 U.S.C. section 1988. See Dkt. No. 19. On October 3 and 5, 2016, Brobst Sr. and the Smith Defendants again filed motions to dismiss and Plaintiffs filed a combined response to both motions. On May 31, 2017, the Honorable Lawrence F. Stengel granted in part and denied in part the motions to

dismiss, leaving Plaintiffs' remaining claims as: civil rights claims under section 1983 for violations of the Plaintiff's Fourteenth and Fourth Amendment rights (Counts I and II); a claim for attorneys' fees pursuant to 42 U.S.C. section 1988 (Count III); a claim for declaratory relief/judgment that the Defendants' actions were in violation of section 1983 (Count XV) and claims for intentional infliction of emotional distress (Count IX), abuse of process (Count XI), trespass (Count XIII) and conversion (Count XIV) pursuant to Pennsylvania law. Upon consent of the parties, Chief Judge Stengel ordered the case transferred for final disposition pursuant to Fed. R. Civ. P. 636(c) on September 1, 2017. On October 20, 2017, a scheduling conference was held pursuant to Fed. R. Civ. P. 16.

The Smith Defendants' Motion for Judgment on the Pleadings was filed on December 7, 2017 and Plaintiffs' Response in Opposition and Cross Motion for Partial Summary Judgment was filed on January 2, 2018. The Smith Defendants' Reply Brief in Support of their Motion for Judgment on the Pleadings was filed on January 17, 2018, and their Response in Opposition to Plaintiff's Cross Motion for Summary Judgment was filed on January 16, 2018. The Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment was filed by Defendant William Brobst, Sr. ("Brobst") on January 16, 2018. Brobst's Motion for Summary Judgment and Statement of Undisputed Material Facts was filed on February 8, 2018 and the Smith Defendants' First Motion Summary Judgment, Statement of Undisputed Material Facts and Memorandum of Law in Support were filed on February 9, 2018. Plaintiffs' Response in Opposition to the Smith Defendants' First Motion for Summary Judgment and Combined Opposition to Defendants' Motions for Summary Judgment, for Judgment on the Pleadings and Renewed Cross-Motion for Partial Summary Judgment and Memorandum in Support were filed

on February 22, 2018.  On March 22, 2018, the Smith Defendants filed a Motion for Leave to File a Second Motion for Summary Judgment, to which Plaintiffs' Response in Opposition was filed on April 5, 2018, and the Smith Defendants filed a Motion for Leave to File a Reply Brief on April 9, 2018.  The Smith Defendants were granted leave to file a second Motion for Summary Judgment and their Reply Brief to Plaintiffs' Opposition was filed on May 15, 2018.  Oral argument on the outstanding motions was held on May 16, 2018, and the Smith Defendants filed their Second Motion for Summary Judgment and Plaintiffs' Opposition to the Smith Defendants' Second Motion for Summary Judgment were also filed on May 16, 2018.

## IV. STANDARD OF REVIEW.

### A. Judgment on the Pleadings.

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is analyzed under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Sharpe v. Midland Credit Mgmt., 269 F. Supp. 3d 648, 652–53 (E.D. Pa. 2017)(citing Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n 4 (3d Cir. 1986); Regalbuto v. City of Phila., 937 F.Supp.2d 374, 376 (E.D.Pa. 1995), *aff'd* 91 F.3d 125 (3d Cir. 1996)). In deciding a Rule 12(c) motion, "the court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record." Id. (quoting Atiyeh v. National Fire Ins. Co. of Hartford, 742 F. Supp.2d 591, 595 (E.D. Pa. 2010)).  Only if "the plaintiffs would not be entitled to relief under any set of facts that could be proved" will a motion for judgment on the pleadings be granted.  Id. (quoting Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001)). Moreover, the court must view the facts and inferences to be drawn from the pleadings in the light most

6

favorable to the non-moving party. Id. (citing Id.)

To survive a motion for judgment on the pleadings, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557, 127 S.Ct. 1955. Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 556 U.S. at 679, 129 S.Ct. 1937. Then the court evaluates all "well-pleaded, nonconclusory factual allegation[s]" to determine whether the plaintiff has stated a plausible claim for relief. Id.

**B.     Summary Judgment.**

Summary judgment is appropriate where the record and evidence, taken in the light most favorable to the non-moving party, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson, 477 U.S. at 249. A factual dispute is material only if it might affect the outcome of the suit under governing law.

7

Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must cite "to particular parts of materials in the record" showing that there is a genuine dispute for trial. Fed. R. Civ. P. 56(c). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325). The non-moving party has the burden of producing evidence to establish prima facie each element of its claim. Celotex, 477 U.S. at 322-323. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine dispute as to any material fact, then summary judgment is proper. Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case." Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting Celotex, 477 U.S. at 325).

**V.    DISCUSSION.**

Following Chief Judge Stengel's decision on the Motion to Dismiss, Plaintiffs' remaining claims are: civil rights claims under section 1983 for violations of the Plaintiff's Fourteenth (Count I) and Fourth (Count II) Amendment rights; a claim for attorneys' fees pursuant to 42 U.S.C. section 1988 (Count III); a claim for declaratory relief/judgment that the Defendants' actions were in violation of section 1983 (Count XV) and state law claims for intentional infliction of emotional distress (Count IX), abuse of process (Count XI), trespass

(Count XIII) and conversion (Count XIV) pursuant to Pennsylvania law.

The Smith Defendants' Motion for Judgment on the Pleadings must be denied because Plaintiffs' Complaint states sufficient facts that "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). See also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Further, Defendants had the opportunity and in fact did file motions for summary judgment following the close of discovery. Accordingly, the Motion for Judgment on the Pleadings will be denied.

### A. Section 1983 Claims - Counts I and II

The Smith Defendants argue in their Second Motion for Summary Judgment that Plaintiffs fail to show that Defendants were "state actors" for purposes of Section 1983 and this essential element is fatal to Counts I, II, III and XV of the Amended Complaint. Under 42 U.S.C. section 1983, a plaintiff must establish that his or her federal constitutional or statutory rights were violated by a person acting "under color of state law." Kost v Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993); Flagg Bros. v. Brooks, 436 U.S. 149, 155-56 (1978). Private actors may be liable under section 1983 if they conspire with state actors to violate civil rights. Lugar v Edmondson Oil Co., Inc., 457 U.S. 922, 930 (1982). Plaintiffs allege at paragraphs 80 and 92 of their Amended Complaint that "[a] private party is liable under § 1983 if they 'willfully participate[] in a joint conspiracy with state officials to deprive a person of a constitutional right,'" citing Abbott v. Latshaw, 164 F.3d 141, 147-148 (3d Cir. 1998).

Curiously, Plaintiffs do not include the Berks County Sheriff or any individual members of the Berks County Sheriff's Office as Defendants in this action. Instead, Plaintiffs

contend that the following language is sufficient to establish that the named Defendants were state actors: "engaged the Berks County Sheriff's Office to forcibly evict Plaintiffs from the premises, seizing and depriving them of re-entry to their mobile homes and outbuilding and all of their personal possessions contained therein and thereupon" (Am. Compl., ¶ 81); and "engaging the Sheriff of Berks County to forcibly evict Plaintiffs from the premises AND their mobile homes and outbuilding contained thereupon (that contain thirty (30) years of personal possessions) make Defendants persons acting under color of law." (Id. at ¶ 85.)

Parties are deemed "state actors" in three situations: (1) when the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) when the private party has acted with the help of or in concert with state officials; and (3) when the state has so far insinuated itself into a position of interdependence with the private party that it must be recognized as a joint participant in the challenged activity. Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir.), *cert. denied*, 516 U.S. 858 (1995). It appears that Plaintiffs are proceeding under the second prong: private actors acting in concert with state officials. See Am. Compl., Dkt. 19, ¶¶ 80, 84-85, 106 (discussing joint participation between Defendants and the Berks County Sheriff's Department in the July 19, 2016 Execution). To establish the requisite level of joint participation and collaboration, Plaintiffs must aver the existence of "a pre-arranged plan [between the police and a private entity] by which the police substituted the judgment of [a] private part[y] for their own official authority." Boyer v Mohring, 994 F. Supp.2d 649, 657 (E.D. Pa. Jan 10, 2014) (quoting Cruz v. Donnelly, 727 F.2d 79, 80 (3d Cir. 1984)). Because Brobst Sr. and his attorneys are not state officials, they are not clearly state actors, and closer analysis must be undertaken to determine if they were acting under color of state law when they allegedly

10

violated Plaintiffs' Fourth and Fourteenth Amendment rights.

Relevant to the instant case is the "joint action test" or "whether the private party has acted with the help of or in concert with state officials." Mikhail v. Kahn, 991 F. Supp.2d 596 (E.D. Pa. 2014), aff'd, 572 F. App'x 68 (3d Cir. 2014)(citing Romich v. Sears Holding Corp., No. 12-5383, 2013 WL 5925082, at *12 (E.D. Pa. Nov. 5, 2013)(quoting Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) and citing Cahill ex rel. L.C. v. Live Nation, 512 F. App'x 227, 230 (3d Cir. 2013)). In their Response to the Defendants' Second Motion for Summary Judgment, Plaintiffs cite their statement of undisputed facts in which they contend that:

> 21) Sr. and his counsel and *pursuant to a contingent fee agreement calling for the "bounty" to be shared between them,* surreptitiously obtained a Judgment by Order and then a Writ of Possession in contravention of the Notice mandates contained within the Pennsylvania Rules of Civil Procedure. *See, e.g.* Pa. R.C.P. 440. Defendants then, engaged the Berks County Sheriff's Office to "forcibly" evict Plaintiffs from the premises based upon the subject Writ. In doing so, Defendants used the Berks County Sheriff not only to displace Plaintiffs from the premises but also to seize and depriving them of reentry to their (moveable) mobile home and outbuilding and all of their personal possessions contained therein and thereupon;
>
> 23) The acts of the Berks County Sheriff (which the Defendants and their Attorneys set in motion) did not just evict them from the premises, it also denied Bob, Roxanne, and Keshia entry to *their* mobile home and access to all of *their* personal records and possessions. The Third Circuit has held that a private individual may be held liable under section 1983 where he "enlists the compulsive powers of the state to seize property by executing on a judgment without pre-deprivation notice or hearing."
>
> . . . .
>
> So **David Crossett sneak**ily obtained a final judgment and then **stealth evicted** Plaintiffs – using the **Sheriff** as his **muscle**, and **lies** about it (including **under Oath repeatedly**), and now the **Smith** Defendants and their counsel are **just making up anything** they can and slinging it at will.

Pls.' Resp. to Defs.' Mot. For Leave to File Second Mot. For S.J., pp. 3, 4; Dkt. No. 81

11

(emphasis supplied). "To properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." Mikhail, 991 F. Supp.2d at 645 (quoting Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010)). The conspiracy must embody "an agreement between the defendants and state officials - a 'meeting of the minds' - to violate the plaintiff's rights." Id. (quoting Chambers v. Phila. Media Network, No. 11–6589, 2013 WL 4857995, at *3 (E.D. Pa. Sept. 12, 2013) (quoting Zenquis v. City of Phila., 861 F. Supp.2d 522, 528–29 (E.D. Pa. 2012) (citing Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008)))). The allegations made by Plaintiffs, that the Defendants "used the Sheriff," and "engaged" the Sheriff to "evict" the Plaintiffs from their mobile home, are inadequate to make out a claim of conspiracy between the Plaintiffs and the Berks County Sheriffs Office because Plaintiffs provide no support to show any meeting of the minds between the named private Defendants and anyone in the Sheriff's Office to violate Plaintiffs' Fourth and/or Fourteenth Amendment rights. Thus, these vague allegations cannot serve as the basis for a conspiracy charge to render the Defendants state actors.

In the absence of sufficient allegations to establish a conspiracy between the Sheriff's Department and private litigants and their attorneys, this Court must determine whether allegedly wrongful conduct in the filing and service of court orders may render litigants state actors under the narrow rule established in Lugar v. Edmondson Oil. Co., 457 U.S. 922, 102 S.Ct. 2744. See Mikhail v. Kahn, 991 F. Supp. 2d 596, 649–56 (E.D. Pa.), aff'd, 572 F. App'x 68 (3d Cir. 2014). Plaintiffs contend that:

> the predicate for Plaintiffs entire case is that Mr. Crossett (or somone at Smith on his behalf and under his direction): (1) obtained a stealth Judgment; (2) used that stealth judgment to obtain a double secret Writ of Possession; and, then (3) used

12

> the double secret Writ of Possession that was obtained with the stealth judgment
> to have the Sheriff "forcibly" evict Plaintiffs out of their home and off the
> property - again without any service or notice to the Plaintiffs.

Pls.' Combined Opp'n and Mem. Law Opposing Defs.' Mots. S.J., pp. 6-7 (citations and footnotes omitted). In Mikhail, the Honorable Gene E.K. Pratter of this District, on review of a motion to dismiss a *pro se* complaint, thoroughly examined whether allegedly wrongful conduct in the filing and service of court orders may render litigants state actors pursuant to § 1983:

> In Lugar, the Supreme Court held that, "[w]hatever may be true in other contexts," private parties became state actors for purposes of § 1983 "when the State has created a system whereby state officials will attach property on the *ex parte* application of one party to a private dispute." 457 U.S. at 942, 102 S.Ct. 2744. The Lugar Court explained, however, that "[a]ction by a private party pursuant to [a] statute, without something more, [is] not sufficient to justify a characterization of that party as a 'state actor.'" Id. at 939, 102 S.Ct. 2744. In Lugar, the defendant and state officials proceeded under a prejudgment attachment procedure [that] required only that [a petitioner] allege, in an *ex parte* petition, a belief that [the named respondent] was disposing of or might dispose of [the petitioner's] property in order to defeat his creditors. Acting upon that petition, a Clerk of the state court issued a writ of attachment, which was then executed by the County Sheriff. This effectively sequestered [the named respondent's] property, although it was left in his possession. Pursuant to the statute, a hearing on the propriety of the attachment and levy was later conducted.
>
> Id. at 924–25, 102 S.Ct. 2744 (emphasis added). Pursuant to the Virginia statute, a judge was not involved; the petitioner could proceed by automatic operation of law. The relevant Virginia statutory provisions stated that "[u]pon the filing of the petition ..., the clerk or the justice of the peace before whom the petition is filed shall issue an attachment in accordance with the prayer of the petition." Petitioner's Brief on the Merits at 8-9, 1981 WL 390021, Lugar, 457 U.S. 922 (quoting then-Va. Code. Ann. § 8-526) (emphasis added). Then, the petitioner, automatically successful, in accordance with these provisions, directed the attachment to the sheriff, who then, again, automatically took his orders to "attach the property mentioned and sought to be attached in the petition...." Id. at 10 (citing then—Va. Code Ann. § 8–533). What quickly become apparent are some of the rare qualities of the prejudgment attachment context: due process concerns are paramount here, it would seem, precisely because the State, in establishing such prejudgment attachment procedures, has abdicated the discretion involved in the exercise of its authority to private individuals. See, e.g., Lugar, 457 U.S. at

13

934, 102 S.Ct. 2744 ("If the creditor-plaintiff violates the debtor-defendant's due process rights by seizing his property in accordance with statutory procedures, there is little or no reason to deny to the latter a cause of action under the federal statute, § 1983, designed to provide judicial redress for just such constitutional violations.").

Lugar also spelled out two other crucial principles. It explicitly disclaimed that its extension of state action to private actors, such that private actors could be sued under § 1983, applied beyond the prejudgment attachment context, although it did not give the apparent reason, gleaned above. See id. at 939 n. 21, 102 S.Ct. 2744 ("[W]e do not hold today that a private party's mere invocation of state legal procedures constitutes 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of law. The holding today, as the above analysis makes clear, is limited to the particular context of prejudgment attachment." (citation and internal quotation marks omitted)). Nonetheless, it is logical that one of the reasons the Supreme Court limited its holding to prejudgment attachment is that prejudgment attachment occurs prejudgment - that is, before a court has exercised or entertained any judgment. Prejudgment attachment comprises "situations [that] arise only when a private individual acts jointly with the aid of a state official, *such as a court clerk or a sherif,*"rather than those in which the judge exercises his independent judgment. Smith v. Wood, 649 F.Supp. 901, 905-07 (E.D. Pa. 1986) (Scirica, J.) (emphasis added); see also, e.g., Read v. Klein, 1 Fed.Appx. 866, 871-72 (10th Cir. 2001) ("Although Lugar adopts an expansive test for state action, the decision is carefully limited to prejudgment seizures of property. In other contexts, a private party's 'mere invocation of state legal procedures' does not constitute joint participation and thus is not state action." (citations and internal quotation marks omitted)); cf., e.g., Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1086 (4th Cir. 1979) ("Such application is appropriate only in the narrow context of a state court or quasi-judicial officer providing prejudgment remedies to a creditor that may cause a deprivation of a debtor's property without due process of law." (citations omitted)). Indeed, the Third Circuit Court of Appeals, in its leading prejudgment seizure case, held that "a private individual who enlists the compulsive powers of the state to seize property by executing on a judgment without pre-deprivation notice or hearing acts under color of law and so may be held liable under section 1983 *if his acts cause a state oficial* to use the state's power of legal compulsion to deprive another of property." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1267 (3d Cir.1994) (emphasis added). That holding, it is rather clear, depends upon a private individual's enlistment of a state's compulsive powers, with no questions asked - i.e., in the absence of any judicial judgment.

Second, the Lugar Court pointed out that a plaintiff has no § 1983 cause of action against the private party who, instead of acting pursuant to the delegation of or

14

opportunity to invoke state authority, "misuse[s] or abuse[s] the statute." Id. at 942, 102 S.Ct. 2744. The Court explained:

> Count two alleged that the deprivation of property resulted from respondents' "malicious, wanton, willful, opressive [sic], [and] unlawful acts." By "unlawful," petitioner apparently meant "unlawful under state law." To say this, however, is to say that the conduct of which petitioner complained could not be ascribed to any governmental decision; rather, respondents were acting contrary to the relevant policy articulated by the State. Nor did they have the authority of state officials to put the weight of the State behind their private decision, i.e., this case does not fall within the abuse of authority doctrine recognized in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). That respondents invoked the statute without the grounds to do so could in no way be attributed to a state rule or a state decision. Count two, therefore, does not state a cause of action under § 1983 but challenges only private action.

Id. at 941, 102 S.Ct. 2744 (alterations in original). In brief, then, "private misuse of a state statute does not describe conduct that can be attributed to the State." Lower courts, accordingly, have also observed that "[a] court cannot attribute private defendants' misuse of a valid state statute to the state. An allegation that private defendants simply misused a valid state statute does not state a cause of action under § 1983" and, "[t]herefore, logically, [a private party's] filing of a complaint apparently containing falsehoods cannot be attributed to the state." Daniel v. Ferguson, 839 F.2d 1124, 1130 (5th Cir. 1988) (per curiam) (citing Lugar, 457 U.S. at 940, 102 S.Ct. 2744); see also id. (citing specific examples of misuse of statutes to "elicit[ ] ... an exercise of official state authority"). What is evident from this examination . . . , then, is that an otherwise private actor may become a state actor where he follows - but not when he abuses - state-created procedures that either delegate the State's authority to him or allow him to invoke it in such a way that agents of the State automatically (i.e., without exercising judgment) exercise it on his behalf.

. . . .

The Third Circuit Court of Appeals' case law is consistent with these distinctions, principles, and conclusions. For instance, in cases involving the claim that store employees, by detaining suspected shoplifters, became joint actors with the police, and therefore state actors, the test asks whether "the police ha[d] a pre-arranged plan with the store" pursuant to which they would act at the employees' behest, "*without independently evaluating the presence of probable cause.*" Cruz v.

15

> Donnelly, 727 F.2d 79, 81 (3d Cir.1984) (per curiam) (emphasis added). The Court of Appeals laid down this test, it explained, because "the critical issue [under Lugar] is whether the state, through its agents or laws, has established a formal procedure or working relationship that drapes private actors with the power of the state," such that the state's "system permit[s] private parties to substitute their judgment for that of a state official or body." Id. at 82; accord Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984) (same, and noting that "Lugar is somewhat opaque"); see Romich, 2013 WL 5925082, at *13–14 (discussing and applying the standard from Cruz v. Donnelly, 727 F.2d 79); cf. Tunstall v. Office of Judicial Support, 820 F.2d 631, 634 (3d Cir. 1987) ("Merely instituting a routine civil suit does not transform a litigant's actions into those taken under color of state law."); Gilbert v. Feld, 788 F.Supp. 854, 860 (E.D. Pa.1992) ("The conspiracy theory involves the assertedly unconstitutional consequences of joint (public and private) mis-use (or abuse) of otherwise valid state procedures, while the improper delegation theory involves the assertedly unconstitutional consequences of placing in private hands the exercise of state power.").

Mikhail v. Kahn, 991 F. Supp. 2d 596, 649–56 (E.D. Pa.), aff'd, 572 F. App'x 68 (3d Cir. 2014)(Third Circuit affirmed motion to dismiss against defendant and her lawyers where plaintiff did not assert facts from which conspiratorial agreement could be inferred to properly plead unconstitutional conspiracy). In this case, Plaintiffs contend that Jordan v. Fox Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1266 (3d Cir. 1994), a prejudgment seizure case, holds that a private party attorney is "absolutely, unquestionably a state actor" where it enlists the powers of the state to deprive a person of due process. In response, Defendants contend that they cannot be liable as a matter of law because Plaintiffs allege only that they misused the Pennsylvania Rules of Civil Procedure in executing on the state court's judgment for possession. Defendants note that the Jordan Court found that the private party defendants, a law firm and its client, could be held liable under section 1983 for utilizing post-confessed judgment procedures that were later found unconstitutional. The key distinction between the instant case and the Jordan case is that the state procedure was found unconstitutional in Jordan. Here, Plaintiffs have not challenged

16

the legality of the Pennsylvania statutes or Rules at issue. Rather, Plaintiffs contend that Defendants wrongfully employed these rules for execution on a judgment for possession by not providing Plaintiffs with notice of their intent to enter final judgment and/or file a praecipe for writ of possession. As noted in Lugar and followed by Judge Pratter in Mikhail, alleged abuse of an otherwise constitutional process does not constitute state action sufficient to maintain a section 1983 claim.

Plaintiffs' allegations and arguments are claims that Brobst Sr. and his attorneys have engaged in misconduct before the state tribunals. Misuse of valid state execution procedures is not actionable against private party defendants under § 1983, pursuant to the Supreme Court's statement to that effect in Lugar. The application of these principles here compels the conclusion that Brobst Sr. and his attorneys' invocation of the state execution procedures do not render Brobst Sr. and his attorneys state actors. As Plaintiffs have not established that Defendants were "state actors," a critical element of their Section 1983 claims, those claims alleging violations of the Plaintiffs' Fourth and Fourteenth Amendment rights must be denied. Accordingly, the Smith Defendants' Second Motion for Summary Judgment is granted as to Counts I and II of the Amended Complaint.

### B. Attorneys' Fees Pursuant to 42 U.S.C. Section 1988 - Count III

In Count III of the Amended Complaint, Plaintiffs seek attorneys fees pursuant to 42 U.S.C. section 1988 for violations of civil rights pursuant to 42 U.S.C. section 1983. The purpose of that statute is to award attorneys' fees to the prevailing party in a civil rights case. Kentucky v. Graham, 473 U.S. 159 (1985). Because Plaintiffs' § 1983 claims alleging violations of Plaintiffs' Fourth and Fourteenth Amendment rights are denied, summary judgment must also

17

be granted on this claim for attorneys' fees for violations of civil rights.

  **C. Claim for Declaratory Relief/Judgment - Count XV**

  In Count XV of the Amended Complaint, Plaintiffs demand, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 that "Defendants actions and conduct in obtaining an ex partite [sic] writ and causing the Berks County Sheriff to displace Plaintiffs from their home was a violation of 42 U.S.C. § 1983." Am. Compl., Count XV.

  A plaintiff can request declaratory relief to remedy alleged ongoing violations of its constitutional rights. Gaus v. Pocono Mountain Reg'l Police Comm'n, No. CV 3:17-1053, 2017 WL 5070227, at *15 (M.D. Pa. Nov. 3, 2017)(citing Blakeney v. Marsico, 340 F. App'x. 778, 780 (3d Cir. 2009)(citations omitted)(Third Circuit held party seeking declaratory relief must allege substantial likelihood he will suffer future harm to satisfy standing requirement of Article III)). However, that plaintiff is not also entitled to declaratory relief that defendants violated his due process rights in the past. Id. (citing Brown v. Fauver, 819 F.2d 395, 399-400 (3d Cir. 1987))(Third Circuit directed District Court to dismiss plaintiff's § 1983 claim for prospective relief where he "has done nothing more than allege past exposure to unconstitutional state action"). Because Plaintiffs' § 1983 claims must be dismissed, summary judgment is granted to Defendants on Count XV seeking relief based on § 1983 under the Federal Declaratory Judgment Act.

  **D. Pennsylvania State Law Claims - Counts IX, XI, XIII and XIV.**

  Under 28 U.S.C. section 1367, there are explicit circumstances under which a district court may decline to exercise supplemental jurisdiction over state law claims in a case. District courts may decline to exercise jurisdiction where: (1) the claim raises a novel or complex

issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1-4). All of Plaintiffs' claims over which this Court has original jurisdiction have been dismissed and pursuant to 28 U.S.C. section 1367(c)(3), the Court declines to exercise jurisdiction over the remaining claims brought pursuant to Pennsylvania law for intentional infliction of emotional distress (Count IX), abuse of process (Count XI), trespass (Count XIII) and conversion (Count XIV). Those claims are dismissed without prejudice for Plaintiffs to raise them in an appropriate state court.

An appropriate Order follows.[3]

---

[3] The remaining dispositive motions, although considered by this Court, will be denied as moot because they involve review of the alleged violations of Plaintiffs' Fourth and Fourteenth Amendment rights and Plaintiffs' state law claims. The finding that Defendants were not state actors and this Court's decline of supplemental jurisdiction over the remaining state law claims precludes discussion of these additional issues.